COLDREN v. EMPIRE RUBBER MFG. CO. (two cases).

(Circuit Court, D. New Jersey. December 18, 1909.)

PATENTS (§ 328*)—INVENTION—APPARATUS AND PROCESS OF MAKING SEALING RINGS.

The Coldren patents, No. 738,295, for an apparatus for making sealing rings, and No. 738,885, for a process for making lipped sealing rings of rubber for canning jars, the product being a rubber sealing ring having a laterally projecting ear, are both void for lack of patentable invention.

In Equity. Suits by William P. Coldren against the Empire Rubber Manufacturing Company. On final hearing. Decrees for defendant.

W. H. Singleton, for complainant.

Francis C. Lowthorp, for defendant.

CROSS, District Judge. Two patent suits between the above-named parties are before the court for adjudication. The testimony was taken under stipulation that it should apply to both causes, as a result of which there is but one record, and the cases were argued as one. The bills and answers are of the usual character in patent cases. The patents involved are No. 738,295, for an apparatus for making sealing rings, issued to the complainant September 8, 1903, and No. 738,885 for a process for making lipped sealing rings for canning jars, issued September 15, 1903, to the complainant. They will be considered in the above order.

Of the apparatus patent the first claim only is in issue. It reads as follows:

"1. In apparatus of the class described, the combination of a vessel having a former-tube provided with a longitudinal bead-forming groove in one side of its bore, a mandrel centered in and spaced from the former-tube, and means to force rubber in a fluid condition from the vessel through the former-tube and thereby produce a rubber tube having a longitudinal bead on one side, substantially as described."

The purpose of the inventor was to provide a machine for making rubber sealing rings, having laterally projecting ears, by means of which the rings might be drawn outwardly at one point from between the neck of the jar and the jar cover, whereby the vacuum in the jar

would be impaired and its cover more readily removed. At first it was the intention of the inventor, as he admits, to procure a patent for a sealing ring of the character just described, but upon investigation he found that this could not be obtained, as a sealing ring having one or more projecting ears was very old in the art. Then it was that he applied for and procured the patents which are involved in these suits. The general structure and mode of operation of the apparatus patent have been clearly and accurately stated by defendant's counsel in the following language:

"The apparatus patent, which will be first discussed, shows and describes a familiar form of extrusion machine adapted for molding continuous forms from plastic materials, such various compounds commonly embodying india rubber as an ingredient. The apparatus comprises a cylindrical horizontal case, into which a hopper opens at its upper side, near one end. At the end of the case opposite the location of the hopper is a former, consisting of a shell and a mandrel or spindle, centrally located within the shell. Within the case is a worm, rotatable by means of a crank. The apparatus is so constructed that, when proper plastic compound is poured into the case through the hopper and the worm is rotated, the compound is forced by the worm toward the further end of the cylinder and through the annular space intermediate the former-shell and the mandrel or spindle, and finally is extruded from the machine in a tubular form. The former shell is provided with a groove on its inner face, which operates to form a longitudinal bead on the exterior face of the tube extruded from the former. The object of this structure is to form a tube having an external longitudinal bead, which tube may be sliced or cut laterally into thin rings, having each an ear or projection by which it may be seized and removed from the canning jar upon which it may be used."

While the application for this patent was pending, or shortly afterwards, the complainant led the defendant to believe that he had obtained a patent for the ring itself, and thereupon made an arrangement with the defendant for its manufacture, both for his own and the defendant's account. All that it was necessary, however, for the defendant to do by way of preparation for such manufacture, was to make a new former or die, or rather, as the complainant himself testifies, to make a longitudinal groove inside of an old former or die, and attach it to a suitable machine. The machine to which this modified former or die was attached and used was an old one that had been in use by the defendant for 10 or 15 years, and was one to which a former of any particular design could be attached by screwing it to the head, and to which, as a matter of fact, a multitude of different formers had been attached and used by the defendant prior to the use of the particular one in question. It was substantially the machine of the complainant's patent. The defendant had previously made on this machine, merely by the substitution of appropriate formers and spindles or pins, prop blocks, gas tubing, carriage tires, circular sealing rings, and other rubber products of different internal and external configuration. There is abundant testimony to show that, if a hollow article were desired, a pin or spindle of the requisite form would be inserted in the machine, which pin or spindle would form the shape of the inside of the rubber tube, and that, if any particular external form were desired, an appropriate form of die or former would shape the outside of the article as desired. In other words, it appears con-

clusively by the evidence that, if a hollow article of any particular external or internal form were desired, all that was necessary to make it was to provide a pin or former, or both, as the case might be, of the requisite shape to produce the required article. This is all that the defendant did, moreover, when at the complainant's request it was asked to make the lipped sealing ring. It simply made a longitudinal groove in an old former and then used it on an old machine, the operation of which was in no wise altered thereby. The defendant's superintendent testified, and his testimony is supported by that of several other witnesses, that, if a customer requested the manufacture of an article of a different shape from that which the company had manufactured before, he would take the shape of the desired article, have their machinist make a suitable former, and, if necessary, a suitable spindle, insert them in the machine, and proceed with the manufacture, and that this was done every day.

There is, moreover, evidence in the case which shows that a die exactly like that of the complainant's patent, except in size, was in use several years before his patent was applied for. The complainant claims, however, that its use was only experimental, and that it was soon abandoned; but, so far as the evidence shows, its use was successful and its product perfect. That more tubing was not manufactured by means of it might well be because the demand for the article, owing to its character, was limited. At all events, it shows that when a lipped product was desired a die suitable to its manufacture was readily devised.

Again, the Hotchkiss patent, No. 105,335, of 1870, discloses a machine essentially like that of the patent under consideration. Hotchkiss says:

"I make use of a die formed with a corrugated interior surface, so as to give to the rubber a beaded appearance upon its surface. I also use a removable die and changeable core, so as to make tubes or strips of any desired size or sectional shape."

Again:

"The movable end cap, k, is screwed into the end of the cylinder, a, and is adapted to receive the die, I, which die, i, is screwed into the cap, k, so as to be changed for making different articles, and the interior of said die is to be grooved with fine grooves in order that a ribbed surface may be made upon the tube or strip."

And the third claim of his patent reads as follows:

"The die, i, formed with a grooved interior surface, for imparting to the surface of the india rubber, issuing from said die, a ribbed appearance as specified."

The ribs of the Hotchkiss patent were, it is true, small and intended for ornamentation; but the important fact remains that the production of ribs by a machine of the character of complainant's was old in the art, and hence whether one rib or many were produced, or whether the ribs were large or small, is comparatively unimportant. If ten ribs could be formed, certainly one could, or any other desired number; and if ten ribs of an eighth of an inch in diameter could be produced, then one of half an inch in diameter could, by a natural and

uninventive modification of the die. The same former, but with a single enlarged groove, would work the miracle. The difference in the size of the grooves of the die would be a matter of degree only, and would not, under the evidence, involve invention.

The Royle patent, No. 641,041, of 1900, is a patent for a machine for manufacturing tubing of a plastic material. The patentee says:

"My invention relates to an improvement in machines for manufacturing tubing in which the material for forming the wall of the tube is forced in a plastic state around a core and through a die."

"The particular structure which I have chosen to illustrate a practical embodiment of my invention is adapted to the manufacture of tires, such, for example, as cushion tires for vehicles, in which the tire is provided with a flat side to rest against the felly of the wheel, and with one or more annular perforations for the reception of retaining wires. I do not, however, wish to limit myself to this particular use of the machine, as it is capable of a more extended use, by changing the form of the die and core to suit the demands."

Royle manifestly understood and disclosed the whole art, and it is difficult to see why, if he could make a flat side to his tire by means of a projection on one side of his die, he or any one skilled in the art could not, if desired, have formed a projection or ear upon the tire by means of a suitable groove in the die. Indeed, he says his apparatus is "capable of a more extended use, by changing the form of the die and core to suit the demands."

Several other patents appear in the record, which need not be specifically referred to. It is sufficient to say that they show conclusively that it was old in the art to conform plastic materials to any desired shape by apparatus, aside from the shape of the former, substantially like that of the patent in suit. In all cases the form of the manufactured article was dependent solely upon the shape of the die and mandrel, a self-evident proposition, and one which no more involved invention, in my judgment, than it would for a person who had a machine in which was inserted a die for stamping square pieces out of sheet metal, but who for some reason desired to change the form of his product from square to round pieces, to change his die from a square to a round shape. The whole matter is well summed up by the defendant's expert in the following language:

"The prior patented art, therefore, shows that the Coldren machine was old and well known, except, possibly, for the particular form of his die, which, after all, involves nothing more than the judicious selection of a skilled workman to accomplish the purpose in view; shows that the particular form of ring produced by his machine was common property many years before Coldren entered the field; and shows that it was a common expedient to make packing rings for any desired purpose by cutting the same from lengths of tubing. Reduced to its lowest terms, therefore, it would appear that the Coldren invention, as far as the machine patent is concerned, resides solely in the form of the die to produce a rib or projection longitudinally of and on the side of the tube. In view of the fact that Mr. Coldren had before him, or at his disposal, a long list of prior patents disclosing machines for making tubes of plastic material of any desired form or configuration, which patents are clearly exemplified in the defendant's exhibits, it is a fair presumption that it required the exercise of mere mechanical skill, such as his experience would readily indicate, to apply to any one of the various forms of extrusion machines a die having a groove in one side thereof to produce a tube having a longitudinal rib thereon. It is also a fair presumption that the problem of producing such a tube, if presented to any workman ordinarily skilled in the

art of rubber working and tube making in particular, would have been solved by him in substantially the identical manner that Mr. Coldren solved it, namely, to change the die in his machine, with which he had produced tubes of varying shapes and contours, so as to make a tube of the required size having a rib running longitudinally thereof. The only question presented to Mr. Coldren that was not fully and specifically answered by the prior patented art was: How can I produce a tube with a single bead running longitudinally thereof? The logical answer that was suggested to him by his experience, and which would have been suggested to any other person skilled in the art, apply to your regular tube machine a die having a recess in its inner surface to provide for the necessary excess material to form the rib. The question was answered by Hotchkiss when he made his tubing with a series of longitudinal ribs, and the problem was solved by each of the patentees whose letters patent are of record herein who changed his die from the ordinary circular form to any other form which would produce projections, ribs, flutings, or the like on the surface of the tube."

As there is nothing inventive in the complainant's apparatus, the patent, therefore, is invalid.

Turning, now, to the second patent involved in this controversy, the first claim only is in issue. It is as follows:

"1. The herein described process of manufacturing sealing rings, consisting in forming a rubber tube with a longitudinal lip piece on one side, and cutting the same cross-sectionally into rings."

It is unnecessary to consider this patent at length. Much that has been said in reference to the machine patent is indirectly, at least, applicable to this. There was nothing new in the described process. Sealing rings and like articles were always formed by first making a piece of tubing and then cutting it cross-sectionally into lengths to form rings. The process is essentially the same, whatever the shape or configuration of the tubing from which the rings are cut. Tubes of various forms and shapes were old in the plastic art, and so, too, was the method of cutting them into rings for use. The complainant's patent disclosed nothing new in the art, and is invalid.

The bills of complaint in both causes will be dismissed, with costs.